The Honorable T.J. Hively Prosecuting Attorney Sixteenth Judicial Circuit P.O. Box 2476 Batesville, Arkansas 72503
Dear Mr. Hively:
This is in response to your request, submitted by Deputy Prosecuting Attorney Wesley J. Ketz, Jr., for an opinion on whether a county can operate a sewer system and force a mandatory hook-up within three hundred feet of the sewer system. He indicates that the county wishes to accomplish this by creating a "public facilities board." Mr. Ketz states that he is aware of Attorney General opinions with regard to charging each resident of the county a fee for solid waste disposal and authorizing a tax collector to refuse payments of any property taxes where the solid waste management fee has not been paid.[1] The question is therefore whether the county can use a public facilities board to operate a sewer system and force a mandatory hook-up within three hundred feet of the sewer system and I assume also that the county is interested in using the tax collection process to collect any fees charged. Mr. Ketz indicates that the three hundred foot limit is proposed because this is the distance a mandatory hook-up may be imposed by a municipality under Arkansas law. See A.C.A. § 14-235-304(1987).
It is my opinion that the answer to your question is "no." A county may not use a public facilities board for this purpose. It may, however, create a "subordinate service district" to provide the sewer service, require the service to be mandatory, and collect the service charges as a part of the tax collection process.
The Arkansas Supreme Court has decided two analogous cases involving the rights of counties to impose mandatory fees and collect them through the tax collection process. See, e.g., Arkansas County v. Burris,308 Ark. 490, 825 S.W.2d 590 (1992 and Freeman v. Curry, 299 Ark. 263,772 S.W.2d 586 (1989). In the latter case, Cleveland County attempted to collect a solid waste fee by billing it on personal property tax notices. The court held the County had no such authority (this was prior to the new legislation which authorized such collection, see n. 1, supra) because it did not follow the procedural requirements for creating a "subordinate service district" set out at A.C.A. §§ 14-14-708 to -711, the only law at the time which allowed charges to be collected through the tax collection process. That subchapter requires notice and a public hearing prior to the adoption of an ordinance creating the district. Additionally, it states that if within thirty days of notice of passage of the ordinance fifty percent of the electors protest in writing, the ordinance shall be void. The court held that because the County had not followed these procedures, it could not impose mandatory fees to be collected through the tax collection process, stating that "[i]t is clear that the General Assembly intended for the taxpayers to have notice and the chance for this type of special referendum before a substantial interference with property ownership, the tax lien, could be imposed." 299 Ark. at 265,266.
In Burris, the Arkansas Supreme Court held that Arkansas County could not use the tax collection process to collect mandatory solid waste disposal fees. (Again, the facts of the case arose prior to the new legislation authorizing this action.) Although in this case, the County had proceeded under a statute which allowed the mandatory collection of fees, there was not specific authorization to use the tax collection process to collect the fees. The county did not even contend that it proceeded under the provisions of A.C.A. §§ 14-14-708 to -711 governing "subordinate service districts."
The subchapter of the Arkansas Code governing "public facilities boards" does not, on its face, authorize the mandatory provision of services. In fact, I have found no specific law authorizing the mandatory provision of sewer services by a county. See, however, A.C.A. §§ 14-249-101 to -106, governing "suburban sewer districts." Additionally, there is no legislation in Arkansas authorizing the collection of sewer service charges (as opposed to solid waste charges) through the county tax collection process. I thus must conclude that the county may not use a "public facilities board" to provide mandatory sewer service.
A county is authorized, however, under A.C.A. § 14-14-708, to create a "subordinate service district" to provide "water, sewer, and other utility services, including sanitary and storm sewers and sewage treatment services. . . ." Counties are authorized under this law to levy service charges to provide and finance this service. See A.C.A. §14-14-708(d). Additionally, the service charges "shall be entered on tax notices to be collected with the real and personal property taxes of the county." A.C.A. § 14-14-711(d). As noted earlier, however, the subchapter governing these districts requires notice, a public hearing, and an opportunity for electors to protest the adoption of an ordinance creating the district.
The foregoing opinion, which I hereby approve, was prepared by Deputy Attorney General Elana C. Wills.
Sincerely,
WINSTON BRYANT Attorney General
WB:ECW/cyh
[1] I assume you refer to Op. Att'y Gen. Nos. 93-172 and 92-187, each of which refers to Act 1007 of 1991 (codified in relevant part at A.C.A. § 8-6-212 (Repl. 1993) (granting counties the authority to enforce mandatory solid waste disposal fees through the tax collection process).See also A.C.A. § 14-233-114 (Cum. Supp. 1993) (authorizing utilization of the tax collection process by joint sanitation authorities.)